**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| ANTHONY ROYBAL; and MATTHEW ROMERO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>         v.<br><br>COMMUNITY OPTIONS, INC.; ROBERT STACK, individually and as officer, director, shareholder, and/or principal of COMMUNITY OPTIONS, INC.; DONALD HAY, individually and as officer, director, and or principal of COMMUNITY OPTIONS, INC.; HECTOR JOHNSON, individually and as officer, director, shareholder, and/or principal of COMMUNITY OPTIONS, INC.; and John Does 1-5,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§    **<u>JURY TRIAL DEMANDED</u>**<br>§<br>§<br>§    Case No.:<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## <u>ORIGINAL COMPLAINT</u>

Plaintiff ANTHONY ROYBAL ("Plaintiff Roybal"); and MATTHEW ROMERO ("Plaintiff Romero") on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") by and through their attorneys, VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from Defendants, COMMUNITY OPTIONS, INC. ("Defendant Community"); ROBERT STACK, individually and as officer, director, shareholder, and/or principal of COMMUNITY OPTIONS, INC., ("Defendant Stack"); DONALD HAY, individually and as officer, director, and or principal of COMMUNITY OPTIONS, INC. ("Defendant Hay"); HECTOR JOHNSON, individually and as officer, director, shareholder, and/or principal of COMMUNITY OPTIONS, INC. ("Defendant Johnson"); and John Does 1-5 (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), as amended,

29 U.S.C. §§ 201 *et seq.*, for violation of Chapter 50 of New Mexico Statutes ("NMS"), and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.       This is a collective and class action brought by Plaintiffs Roybal and Romero challenging acts committed by Defendants against Plaintiffs Roybal and Romero and those similarly situated, which amounted to violations of federal and state wage and hour laws.

2.       Defendant Community is a non-profit corporation engaged in the business of providing living assistance and health care to persons with disabilities and infirmities (the "Client(s)").  Defendants provide these services in ten (10) states across the country—Arizona, Kentucky, Maryland, New Jersey, New Mexico, New York, South Carolina, Tennessee, Texas, and Utah.

3.       Defendants employed Plaintiffs Roybal and Romero as direct support professionals (the "Aides"). The Aides' job duties included, among other things, changing their Client's clothes, heavy cleaning, cooking for their Client, feeding their Client, driving their Client, catheterizing their Client, bathing their Client, and medicating their Client.

4.       Plaintiffs Roybal and Romero bring this action on behalf of themselves, and those similarly situated, as a result of Defendants' willful violation of federal and state wage and hour laws, as set forth herein.

5.       First, Plaintiffs Roybal and Romero bring this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of persons who are and were employed by Defendants as direct support professionals during the past (3) years through the final date of disposition of this action who were solely paid straight time for the first eighty-eight (88) hours worked biweekly in violation of the FLSA and allege that they are entitled to recover: (i) unpaid and incorrectly paid

2

wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, and (v) attorney fees and costs, pursuant to the FLSA and such other and further relief as this Court finds necessary and proper.

6.     Second, Plaintiffs Roybal and Romero bring this action, pursuant to Fed. R. Civ. P. 23, on behalf of a class of persons who are and were employed by Defendants as direct support professionals during the past (3) years through the final date of disposition of this action who were solely paid straight time for the first eighty-eight (88) hours worked biweekly in violation of the NMS and allege that they are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, and (v) attorney fees and costs, pursuant to the NMS and such other and further relief as this Court finds necessary and proper.

7.     In addition to the collective and class allegations, Plaintiff Roybal brings this action pursuant to the FLSA and NMS for his unlawful termination in retaliation for his complaints to Defendants regarding their unlawful pay practices of withholding overtime premium pay until an direct support professional worked over eighty-eight (88) hours biweekly and is entitled to recover: (1) back pay, (2) liquidated damages, (3) emotional damages, (4) attorneys' fees and costs, (5) interest, and (6) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress

providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. §§ 201 *et seq*.

9.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business and reside in this district.

## THE PARTIES

11.     Plaintiff Roybal is a citizen of New Mexico and resides in Albuquerque, New Mexico.

12.     At all relevant times, Plaintiff Roybal was an employee within the meaning of the FLSA and NMS.

13.     Plaintiff Romero is a citizen of New Mexico and resides in Albuquerque, New Mexico.

14.     At all relevant times, Plaintiff Romero was an employee within the meaning of the FLSA and NMS.

15.     Upon information and belief, Defendant Community is incorporated under the laws of the state of New Jersey and has its principal place of business in Princeton, New Jersey.

16.     Defendant Community transacted business in New Mexico by employing Plaintiffs Roybal and Romero and those similarly situated as Aides in New Mexico and throughout the

country. Defendant Community continues to transact business in New Mexico by employing Aides and by owning and operating offices within the state of New Mexico.

17.     Furthermore, Defendant Community owns and operates offices that conduct continuous business in ten (10) states—Arizona, Kentucky, Maryland, New Jersey, New Mexico, New York, South Carolina, Tennessee, Texas, and Utah.

18.     Defendant Community has at all relevant times been an employer covered by the FLSA and the NMS.

19.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Community exceeds $500,000.00 and thus subjects Defendant Community to the FLSA's overtime requirements.

20.     Upon information and belief, Defendant Community is engaged in interstate commerce.  This independently subjects Defendant Community to the overtime requirements of the FLSA.

21.     Upon information and belief, Defendant Stack is the founder, president, and chief executive officer of Defendant Community.

22.     Upon information and belief, Defendant Stack is a citizen of and resides in New Jersey and transacted business in the state of New Mexico by employing Plaintiffs Roybal and Romero and those similarly situated as Aides in New Mexico. Defendant Stack continues to transact business in New Mexico by employing Aides and by owning and operating offices within the state of New Mexico and throughout the country.

23.     Upon information and belief, Defendant Hay is the New Mexico executive director for Defendant Community.

24.     Upon information and belief, Defendant Hay is a citizen of and resides in New Mexico and transacted business in the state of New Mexico by employing Plaintiffs Roybal and Romero and those similarly situated as Aides in New Mexico. Defendant Hay continues to transact business in New Mexico by employing Aides within New Mexico.

25.     Upon information and belief, Defendant Johnson is the New Mexico state director for Defendant Community.

26.     Upon information and belief, Defendant Johnson is a citizen of and resides in New Mexico and transacted business in the state of New Mexico by employing Plaintiffs Roybal and Romero and those similarly situated as Aides in New Mexico. Defendant Johnson continues to transact business in New Mexico by employing Aides within New Mexico.

27.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as John Does 1-5, inclusive, are currently unknown and cannot be ascertained by the Aides, who therefore sue Defendants by such fictitious names pursuant to pursuant to Fed R. Civ. P. 15(C)(1)(c).

28.     Plaintiffs Roybal and Romero will seek leave of court to amend this Complaint to reflect the true names and capacities of Defendants designated as "John Does 1-5" when such identities become known.

29.     Plaintiffs Roybal and Romero allege, upon information and belief, that each of Defendants Stack, Hay, Johnson, and John Doe(s) are legally responsible in some manner for the unlawful acts referred within the Complaint.

30.     Defendants jointly employed Plaintiffs Roybal and Romero and those similarly situated by employing or acting in the interest of employer towards Plaintiffs and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and

directing the terms of employment and compensation and by suffering all those similarly situated employees to work.

## STATEMENT OF THE FACTS

**I.**     **Facts Common to All Plaintiffs**

      **a.  The Defendants-Client Relationship**

31.     Defendant Community is a multi-state non-profit corporation that provides living assistance and health care for those with disabilities and/or infirmities.

32.     Upon information and belief, Defendants own and operate multiple offices within ten (10) states—Arizona, Kentucky, Maryland, New Jersey, New Mexico, New York, South Carolina, Tennessee, Texas, and Utah.

33.     Upon information and belief, all of Defendants' offices report to their corporate office located in Princeton, New Jersey (the "Corporate Office").

34.     Defendants own and operate rental units where the Clients reside and pay rent.

35.     Upon information and belief, Clients pay Defendants a single lump sum payment each week for both rent and for the Aides care. Upon information and belief, it is Defendants' common practice to receive payment from the client via a money order, which is deducted from state and/or federal disability checks.

36.     Upon information and belief, the amount of Clients living in a single rental unit ranged from one (1) to approximately four (4).

37.     Upon information and belief, Aides were only assigned to work with one (1) Client at a time.

38.     Defendants are third party employers with respect to the Aides and the Clients.

39.     The Clients do not employ or pay the Aides.

40.     The Clients pay Defendants for the Aides' care and Defendants pay the Aides.

41.     Defendants have the power to hire and fire the Aides.

42.     The Clients do not have the power to hire or fire the Aides.

43.     Upon information and belief, Defendants monitor and control all aspects of the Aides' employment.

44.     Upon information and belief, Aides do not live with their Clients.

45.     Aides do not have specialized knowledge in medicine or science

46.     Upon information and belief, Aides performed medically related services on the Clients such as, but not limited to, cauterizations, medications, and feeding tubes.

### b.  The Aides' Work Schedule

47.     Upon information and belief, Aides received their work schedule at the conclusion of their interview with Defendants.

48.     Aides are not allowed to select their own work schedule and are required to work the days and hours set by Defendants.

49.     Upon information and belief, prior to May 2017, Aides were scheduled to work three (3) twelve (12) hour shifts and one (1) six (6) hour shift per workweek. Upon information and belief, Defendants reduced the Aides' work schedule to three (3) twelve (12) hour shifts and one (1) four (4) hour shift per workweek.

50.     Aides frequently work more hours than their scheduled work hours, including after the May 2017 reduction.

### c.  Defendants' Compensation Scheme

51.     Aides are compensated on an hourly basis. Upon information and belief, Aides are compensated at a rate of approximately $11.09 per hour.

52.     Aides' pay periods were fourteen (14) days longs, which begin on a Sunday and ended on Sunday.

53.     Aides were required to record their hours on a paper time sheet.

54.     Aides then submitted their time sheet to their supervisor at their local branch office.

55.     The supervisor at the local branch office then electronically submitted the Aides' recorded time to the Corporate Office.

56.     Defendants then issued paychecks to the Aides from the Corporate Office on the10th and 25th day of each month.

57.     Upon information and belief, in or around June 2017, Defendants retired the paper time sheet system and implemented a telephone "call in" time recording system. The telephone "call in" system is a "1-800" number that records each time an Aide calls to "clock-in" and "clock-out."

58.     Aides are not exempt from the overtime provisions of the FLSA.

59.     In accordance with Defendants' policy, Aides are only paid with an overtime premium for hours they worked in excess of eighty-eight (88) hours bi-weekly.

60.     For example, from April 16, 2016 to April 30, 2017, Plaintiff Roybal worked a total of ninety-two (92) hours. However, Plaintiff Roybal only received four (4) hours of pay at the overtime premium and the remaining eighty-eight (88) hours were paid at his straight rate.

61.     As for another example, from May 1, 2017 to May 15, 2017, Plaintiff Roybal worked eighty-eight (88) hours and was solely paid his straight time rate for all hours worked during said period.

### d. Aides Nationwide

62.     Upon information and belief, Aides were employed in all states where Defendants' transact business—Arizona, Kentucky, Maryland, New Jersey, New Mexico, New York, South Carolina, Tennessee, Texas, and Utah.

63.     Anonymous Aides throughout the United States have complained on various internet job-posting websites, such as www.glassdoor.com and www.indeed.com, regarding Defendants' willful failure to compensate them with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

64.     These postings include, but aren't limited to:

    i.    On July 31, 2017, an Aide complained on www.glassdoor.com: "we have to cover shifts no matter if its overtime (that we are not inbursed [sic] for)."

    ii.    On July 31, 2017, an Aide working in Pittsburg, Pennsylvania complained on www.glassdoor.com: "Other employees do not show up to relive [sic] you from your shift and there is no communication. I ended up calling the cops because management would not answer my calls and I was going into hours of OT [sic] and no one showed up to relive me when I was sick."

    iii.    On June 5, 2017, an Aide working in Philadelphia, Pennsylvania complained on www.indeed.com: "its [sic] an ok company could be better like everyone just takes too long to pay you and done [sic] offer overtime. they [sic] will pay you 87 of regular time and make an excuse."

    iv.    On January 9, 2017, an Aide working in Ocean County, New Jersey complained on www.indeed.com: "no overtime."

v.　　On November 17, 2016, an Aide working in Princeton, New Jersey complained on www.indeed.com: "no overtime allowed."

## II.　　Facts Specific to Plaintiff Roybal

65.　　Plaintiff Roybal repeats and re-alleges all allegations and facts in the proceeding paragraphs.

66.　　In March 2017, Plaintiff Roybal began his employment with Defendants as an Aide.

67.　　Plaintiff Roybal worked out of Defendants' Santa Fe, New Mexico branch.

68.　　Plaintiffs Roybal and Plaintiff Romero provided health care services to the same Client, a quadriplegic.

69.　　Plaintiff Roybal's Client resided in a rental unit owned by Defendants.

70.　　Upon information and belief, Plaintiff Roybal's Client paid Defendants a single lump sum payment each month for rent and Plaintiff Roybal's care.

71.　　Defendants then paid Plaintiff Roybal on an hourly basis.

72.　　Plaintiff Roybal was originally promised an hourly rate of $12.09 per hour, but upon hiring he was paid at a rate of $11.09 per hour.

73.　　Upon hiring, Plaintiff Roybal was told that he was required to work overtime hours.

74.　　Upon hiring, Plaintiff Roybal was issued his work schedule.

75.　　Plaintiff Roybal worked his Client's day shift, which began at approximately 7:00 am and ended at approximately 7:00 pm.

76.　　Throughout Plaintiff Roybal's employment he was required to work at least forty-two (42) hours per workweek—three (3) twelve (12) hour shifts and one (1) six (6) hour shift.

77.　　Plaintiff Roybal often worked more than forty-two (42) hours per workweek. On average he worked approximately forty-six (46) hours per workweek.

11

78.     Plaintiff Roybal recorded his time on a paper time sheet and submitted it to his supervisor, Mr. Daniel Arrison ("Mr. Arrison") at Defendants' Santa Fe branch. Mr. Arrison then entered Plaintiff Roybal's hours into the computer system and sent it to the Corporate Office.

79.     Plaintiff Roybal was issued his paychecks from the Corporate Office.

80.     Plaintiff Roybal was only paid his straight-rate for the first eight (8) hours of overtime he worked on a bi-weekly basis.

81.     Accordingly, Plaintiff Roybal was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

82.     In or around May 2017, Plaintiff Roybal made a complaint to Defendant Hay regarding Defendants' unlawful pay practices of not compensating Aides with an overtime premium for all hours worked in excess of forty (40) hours per workweek. Defendant Hay directed Plaintiff Roybal to speak to Mr. Arrison who told him that he needed to make the complaint to the Corporate Office.

83.     Following his conversation with Mr. Arrison, Plaintiff Roybal complained to Chelsea (last name unknown) from the Corporate Office. Chelsea told him that the reason why he was not receiving overtime pay was simply because "of how the days lined up in the pay period."

84.     Within an hour after his telephone conversation with Chelsea, Mr. Arrison telephoned Plaintiff Roybal and summoned him to a meeting at the Santa Fe branch office.

85.     At the meeting, Mr. Arrison informed Plaintiff Roybal that the Los Alamos bank filed a complaint against him for using his Client's credit card without his permission.

86.     Defendants did not provide any charge or documentation of the bank's accusation.

87.     Defendants then suspended Plaintiff Roybal and promised him he would be reinstated pending an investigation by the New Mexico Department of Health Division of Health Improvement's ("DHI") investigation.

88.     After a three (3) month investigation, the DHI declared that there was no evidence supporting Defendants' allegations against Plaintiff Roybal.

89.     Plaintiff Roybal informed the Corporate Office of the DHI's findings and requested to return to work. The Corporate Office stated, however, that Plaintiff Roybal was terminated due two (2) "signed" disciplinary write ups—one (1) for "throwing away meat" and the other for "not being properly trained on the computer."

90.     Both of these write ups were dated while Plaintiff Roybal was on suspension. Notably, the signatures on the write ups were forged by Defendants as Plaintiff Roybal did not sign them.

91.     Accordingly, Plaintiff Roybal was unlawfully terminated on August 18, 2017, after an approximately three (3) month suspension.

### III.     Facts Specific to Plaintiff Romero

92.     Plaintiff Romero repeats and re-alleges all allegations and facts in the proceeding paragraphs.

93.     In March 2017, Plaintiff Romero began his employment with Defendants as an Aide.

94.     Plaintiff Romero worked out of Defendants' Santa Fe, New Mexico branch.

95.     Plaintiff Romero provided living assistance and health care services to the same Client as Plaintiff Romero, but worked the night shift rather than the day shift.

96.     Plaintiff Romero's Client resided in a rental unit owned by Defendants.

97.     Upon information and belief, Plaintiff Romero's Client paid Defendants a single lump sum payment each month for rent and Plaintiff Romero's care.

98.     Defendants then paid Plaintiff Romero on an hourly basis.

99.     Plaintiff Romero was originally promised an hourly rate of $12.09 per hour, but upon hiring he was paid at a rate of $11.09 per hour.

100.    Upon hiring, Plaintiff Romero was told that he was required to work overtime hours.

101.    Upon hiring, Plaintiff Romero was issued his work schedule.

102.    Plaintiff Romero worked his Client's night shift, which began at approximately 7:00 pm and ended at approximately at 7:00 am.

103.    From the beginning of Plaintiff Romero's employment to about May 2017, he was required to work at least forty-two (42) hours per workweek—three (3) twelve (12) hour shifts and one six (6) hour shift. In or around May 2017, his schedule changed and he was required to work at least forty (40) hours per workweek—three (3) twelve (12) hour shifts and one four (4) hour shift. Despite, his change in schedule Plaintiff Romero still worked in excess of forty (40) hours per workweek.

104.    Plaintiff Romero often worked more than forty-two (42) hours per workweek. On average he worked approximately forty-seven (47) hours per workweek.

105.    Plaintiff Romero recorded his time on a paper time sheet and submitted it to Mr. Arrison. Mr. Arrison then entered Plaintiff Romero's hours into the computer system and sent it to the Corporate Office.

106.    Plaintiff Romero was issued his paychecks from the Corporate Office.

107.    Plaintiff Romero was only paid his straight-rate for the first eight (8) hours of overtime he worked biweekly.

108.    Accordingly, Plaintiff Romero was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

## FLSA OVERTIME COLLECTIVE ACTION ALLEGATIONS

109.    Plaintiffs Roybal and Romero seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All direct support professionals employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring them to work in excess of forty (40) hours per workweek without being compensated with an overtime premium.

110.    At all relevant times, Plaintiffs Roybal and Romero were similarly situated to all such individuals in the FLSA Overtime Collective[1] because while employed by Defendants, Plaintiffs Roybal and Romero and all FLSA Overtime Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

111.    Defendants are and have been aware of the requirement to pay Plaintiffs Roybal and Romero and the FLSA Overtime Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully chose not to do so.

---

[1]        Hereinafter referred to as the FLSA Overtime Plaintiffs.

112.     The FLSA Overtime Plaintiffs, under Plaintiff Roybal's and Romero's FLSA claim, are readily discernable and ascertainable.  All FLSA Overtime Plaintiffs' contact information is readily available in Defendants' records.  Notice of this collective action can be made as soon as the Court determines.

113.     The number of FLSA Overtime Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

114.     All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiffs Roybal and Romero.  No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiffs Roybal and Romero and the claims asserted by Plaintiffs Roybal and Romero are typical of those of members of the collective.

115.     Plaintiffs Roybal and Romero will fairly and adequately represent the interests of the collective and have no interests conflicting with the collective.

116.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

117.     Plaintiff Roybal's and Romero's attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

118.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Overtime Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

119.     The questions of law and fact are nearly identical for all FLSA Overtime Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## RULE 23 CLASS ACTION ALLEGATIONS

120.     Plaintiffs Roybal and Romero additionally seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous three (3) years, were subjected to violations of the NMS ("New Mexico Class").

121.      The Class which Plaintiffs Roybal and Romero seek to define includes:

> All direct support professionals employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring them to work in excess of forty (40) hours per workweek without being compensated with an overtime premium.

122.      The number of class members protected by the NMS and who have suffered under Defendants' violation of the NMS as set forth herein, are too numerous to join in a single action, necessitating class recognition.

123.      All questions relating to the Class's allegations under the NMS share a common factual basis with those raised by the claims of Plaintiffs Roybal and Romero.  No claims under the NMS relating to the denial of overtime are specific to Plaintiffs Roybal and Romero or any proposed New Mexico Class member[2] and the claims of Plaintiffs Roybal and Romero are typical of those asserted by the proposed New Mexico Class.

124.      Plaintiffs Roybal and Romero will fairly and adequately represent the interests of all members of the proposed New Mexico Class.

---

[2]          Hereinafter referred the New Mexico Class Plaintiffs.

125.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the NMS by failing to pay the overtime premium for all hours worked in excess of forty (40) hours per workweek to all members of the proposed New Mexico Class.

126.    The class members of the proposed New Mexico Class are readily discernable and ascertainable.  Contact information for all members of the proposed New Mexico Class is readily available from Defendants since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

127.    Plaintiffs Roybal and Romero assert these claims on their own behalf as well as on behalf of the New Mexico Class Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

128.    Plaintiffs Roybal and Romero are able to fairly represent and properly protect the interests of the absent members of the proposed New Mexico Class and have no interests conflicting with those of the Class.

129.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual New Mexico Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

130.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff Roybal's and Romero's willingness to proceed against Defendants.  The

anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the New Mexico Class Plaintiffs' jobs and continued employment.

131.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed New Mexico Class, continued violations of the NMS will undoubtedly continue.

132.    Whether Plaintiffs Roybal and Romero and the New Mexico Class Plaintiffs were properly compensated with overtime pay for all hours worked in excess of forty (40) hours per workweek is a common question which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiffs on Behalf of All FLSA Overtime Plaintiffs**

133.    Plaintiffs Roybal and Romero and the FLSA Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

134.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Roybal and Romero and other FLSA Overtime Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

135.    Upon information and belief, Defendants knowingly failed to pay Plaintiffs Roybal and Romero and the FLSA Overtime Plaintiffs for all hours worked and the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

136.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

137.    Defendants' conduct was in violation of the Fair Labor Standards Act.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**Chapter 50 of the New Mexico Statutes, Made by Plaintiffs on Behalf of All New Mexico Class Plaintiffs**

138.    Plaintiffs Roybal and Romero and the New Mexico Class Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

139.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Roybal and Romero and other New Mexico Class Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

140.    Upon information and belief, Defendants knowingly failed to pay Plaintiffs Roybal and Romero and the New Mexico Class Plaintiffs for all hours worked and the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

141.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

142.    Defendants' conduct was in violation of Chapter 50 of the New Mexico Statutes.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.***
**(Retaliatory Discharge)**

143.    Plaintiff Roybal re-alleges and incorporates by reference all allegations in all preceding paragraphs.

144.    Plaintiff Roybal engaged in protected activity by complaining to Defendants that their conduct violated the FLSA by refusing to compensate Aides with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

145.    In May 2017, Plaintiff Roybal made these complaints to Defendants.

146.    As a direct retaliatory result of Plaintiff Roybal's protected activity, Defendants suspended him within an hour after his complaint to Defendants' Corporate Office and subsequently terminated him on August 18, 2017.

147.    Defendants' conduct was in violation of the Fair Labor Standards Act.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### Chapter 50 of the New Mexico Statutes
### (Retaliatory Discharge)

148.    Plaintiff Roybal re-alleges and incorporates by reference all allegations in all preceding paragraphs.

149.    Plaintiff Roybal engaged in protected activity by complaining to Defendants that their conduct violated the NMS by refusing to compensate Aides with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

150.    In May 2017, Plaintiff Roybal made these complaints to Defendants.

151.    As a direct retaliatory result of Plaintiff Roybal's protected activity, Defendants suspended him within an hour after his complaint to Defendants' Corporate Office and subsequently terminated him on August 18, 2017.

152.    Defendants' conduct was in violation of Chapter 50 of the New Mexico Statutes.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Roybal and Romero, on behalf of themselves and the FLSA Collective and New Mexico Class Plaintiffs employed by Defendants, demand judgment against Defendants as follows:

A.    At the earliest possible time, Plaintiffs Roybal and Romero should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collectives, defined herein.  Such notice shall inform them that this civil action has been

filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B.     Designation of Plaintiffs Roybal and Romero as representatives of the FLSA Collective and Rule 23 Class defined herein, and Plaintiff Roybal's and Romero's counsel as Class Counsel;

C.     Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed New Mexico Class members under Chapter 50 of the New Mexico Statutes;

E.     Demand a jury trial on these issues to determine liability and damages;

F.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

G.     A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and Chapter 50 of the New Mexico Statutes;

H.     All damages which Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

I.      All damages which Plaintiff Roybal has sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful retaliatory conduct, and for emotional distress humiliation, embarrassment, and anguish;

J.      An award to Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

K.      An award to Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

L.      An award to Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

M.      Awarding Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

N.      Pre-judgment and post-judgment interest, as provided by law; and

O.      Granting Plaintiffs Roybal and Romero and all FLSA Overtime and New Mexico Class Plaintiffs other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated:   January 18, 2018
          Garden City, New York

Respectfully submitted,

  /s/ James A. Vagnini
James Vagnini, Esq.
Robert J. Valli, Jr., Esq.
Sara Wyn Kane, Esq.
Monica Hincken, Esq.
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFFS**